The next case on the calendar is Estate of Arlene Townsend versus Steven Berman. Good morning. Is Council for the State of Arlene Townsend prepared? Okay. Thank you. This is a case involving the appeal of a bankruptcy court denial of a motion to disqualify a firm that had an interest, multiple interest, that were not disclosed. Council, can you speak a little more into the microphone? A little what? Can you speak into the microphone? Yes, yes. I'm hard of hearing. My hearing aids, I have to adjust them before I get in. I'm sorry. Is this better? Yes, thank you, Council. I'm sorry. This is a case involving disqualification of a law firm that had multiple adverse interests at the time they were employed. The firm was employed in June 2012 in a bankruptcy that was filed in December of 2011. They were admitted by the court under Rule 327A as general counsel and would act also as special counsel over the objection of the trustee. Both the trustees, general counsel and other general counsel stated that there was no known conflicts or disqualifying interest, and the law firm, Schoenberger, Luke McKendrick, filed a disclosure form stating that they had no interest or conflicts that needed to be noted other than one involving a marriage of a family member to one of the persons who worked in the U.S. trustee's office. They came into the case, as I said, in June of 2012. In April of 2012, the debtor, alleged debtor, in this involuntary Chapter 7 case had filed an appearance. That debtor stated that it was their contention that the FLTCI debtor, which was the only debtor in the case, was the owner of an entity called Trans Health Management Inc., THMI, and that THMI had contracted with a company called Lyric Encore Claremont, and that THMI had a limited interest in the case, and Lyric Claremont Encore was the primary interest, did parties in managing the facilities. The question in this case was collecting on a personal injury judgment that had been obtained in 2010 in a court where close before trial, after six years of litigation, and I think seventeen lawyers had represented the defendants, all counsel withdrew, and the case was tried on a default to a jury. It resulted in a $55 million judgment against THMI. We filed a motion for a pleader against the company that we were told. Can I just cut to the chase here and ask you to address something that's bothering me in this case? So the district court found that the law firm was disinterested. It found that they should have disclosed these contacts, but that they were disinterested, and the way I read the law is that that disinterestedness finding is one that we review for clear error, so it's a factual determination that we have to apply clear error review to. What are the facts that you see in the record that establish that the district court's fact finding of disinterestedness is clearly erroneous, right? That means that no district court could ever find it. The Medicaid, well first, the first point is the law firm was the, and it's who they represent that has a conflict that creates the conflict. The law firm was general counsel to an entity known by the letters HCN, it's now known as Welltower, a REIT that owns nursing home properties. That entity owned the nursing home properties where four of the six creditors in the bankruptcy resided. One was in Pennsylvania. There's never been a disclosure that the law firm, Schumer & Kilpatrick, represented the owner of the and there was never any indication that Lyric was a target or part of this case. That's why I was claiming that the debtors started off by coming in and saying Lyric operated this home for us. We didn't, and in 2013 there was a plethora of discovery that the debtors. So Lyric, I mean if I, so just, I mean correct me if I'm wrong, so I know that the law firm represented HCN, right? They were effectively outside counsel to HCN, right? With these Lyric, I think it's like Lyric and then Lyric 3, something like that. It's my understanding that they never represented Lyric or Lyric 3, but that HCN had relationships with Lyric and Lyric 3. Am I understanding that correctly? No, sir. The 2009 Medicaid cost reports for Lyric stated that Schumer & Kilpatrick received professional fees for services to Lyric. 2010, likewise, I think Schumer & Kilpatrick was paid over $30,000 and then in 2012, after the bankruptcy, they represented Lyric. There's, Lyric was a co-defendant with HCN in the town, so there's six creditors. Right, right. And so you got- So weren't they only adverse, weren't they only adverse to HCN? I mean that's my understanding of the record that they were just adverse to HCN. Then who was just adverse to HCN? Lyric. No, HCN was a defendant in the Townsend case. The creditor- I understand that. I understand that, counsel, but Lyric, um, was Lyric a party to that case, to the Townsend case? I couldn't understand, ma'am. That's okay, don't worry about it. Well, so the question, I think, so and just, I mean, correct me if I'm wrong, but I thought that the district court found, and maybe I'm wrong about this, this is, you know, a complicated proceeding. I thought that the district court found that these professional fees that Lyric paid, that you have evidence that Lyric paid to the law firm, were paid because HCN and Lyric were counterparties to some kind of deal and then Lyric ended up paying the professional fees as part of that. If they did, it would be illegal because on the Medicaid cost report, Lyric cannot place the fees for HCN. So it's illegal. So your point then- You can't charge Medicaid on a cost report for a law firm that's not really representing you, that represents somebody else. Okay. There's no such thing as a pass-through on cost reports to Medicaid and that's a very hard line. Okay. And they were on it for things such as they did the licensing work. There's nothing in the lease that would indicate why that's okay. More importantly, there's no evidence. So far, we have as an affidavit, it was a supplemental disclosure from Mr. Berman that stated that somehow he was being pursued surreptitiously about his connections, that he was filing a supplemental disclosure to stop the damage to his reputation for having heard that his trustee and his other general counsel had been approached. It states also that the U.S. trustee was approached, but the U.S. trustee never responded. The connection to SLK and HCN is not the only connection we're dealing with here. Lyric was a defendant at that time, at the very moment that he came in this case. In fact, he joined the case. He became a participant in the case against Lyric. He entered Mr. Berman and Mr. Traub for SLK, went to Pennsylvania, filed a motion to join the case when Lyric and Lyric III sued THMI and THI the receiver. Mr. Berman and Mr. Traub were admitted by the Pennsylvania court in the litigation when Lyric filed a cross-claim against THI and THMI to determine the meaning of a bankruptcy order and if there would be indemnification on Lyric's part. As noted in the record, there was a transaction, a closing agreement that the district court found there was no need to supplement the record because landlord and owner of HCN served as both landlord and at a time as the owner of Lyric. The documents disclosed were acknowledged that the master tenant agreement required that all notice of litigation that could possibly affect HCN would have to be provided by Lyric. Lyric's counsel was counseled to HCN. They were co-defendants. The Lyric co-defendants and the THMI co-defendants had a common defense agreement and the Jones case did not resolve until 2015, I think. So he was actually involved in the court case, which was actually enjoined in November 13. I don't know how it happened, but he, his firm got involved in defending against Lyric and based upon what we know of the closing agreement, HCN became an equity owner of Lyric at some time in 2012. There's never been a deposition. We were not allowed to cross or challenge the affidavit. The affidavit is not, does not match this court's standards for an affidavit. No discovery was allowed. We never had hearing. When it was remanded, it determined the judge Is this argument going to the clear error point? Absolutely. Okay. That you were denied discovery. Right. The judge's mind is a fact. We're based upon no facts. I understand. I just wanted to understand. I understand your point. Yeah. Thank you, sir. Thank you. Thank you. Thank you. You speak clearly. Counsel, you are going into your rebuttal time. Would you like to continue or would you like to save your time for rebuttal? I'll save my time for rebuttal. Thank you. Thank you. Good morning, Mr. Berman. Good morning, Your Honor. Judges Lagoa, Brasher, and Chauflat, may it please the court. My name is Steve Berman and I represent the Appalese and I'm evidently one of the Appalese in the case style, which is not my preference. Certainly I'm a bankruptcy lawyer and I do I failed to disclose my firm's connections to healthcare REIT. There's no question about that. The bankruptcy court made that finding and then determined that our failure to disclose was inadvertent and non-negligent and that as a result of the fact that there was no disqualifying conflict, the omission was inadvertent, the connections were not material to the case, we corrected the omissions, and our firm provided a substantial benefit to the estate. No sanctions were warranted. What is before the court today is whether in the circumstances where you have an inadvertent and non-negligent failure to disclose under Rule 2014, whether the bankruptcy That's really the question. You have a few different areas of law. You have the statute, right? 327A is what sets the standard for employment of professionals. You have the Rule 2014, which tells you what needs to be in your disclosure. And then if you fail to comply with the disclosure, which the court found we did fail to comply with the disclosure of healthcare REIT, 328C tells you that the bankruptcy court has discretion to decide. The appellant's argument is that the bankruptcy court should not have that discretion. The appellant's argument is that if there is a violation, in this case, it's a fairly remote violation because their healthcare REIT had already been dismissed with prejudice from the lawsuits, the state court lawsuits, well before the bankruptcy case was filed and certainly well before our firm got involved and because healthcare REIT was never identified as a target in the litigation that was very substantial. We had a 12-day bench trial. We had over 3,000 exhibits. We had over 100 hours of witness testimony in a trial that our firm did jointly with the appellants. We worked hand in glove to put on a case that brought in 24-plus million dollars. And as a result of the discovery we conducted, our firm conducted, another claim was brought against another litigation target that brought in an additional $6 million. So the question before the court today is not whether there was a nondisclosure under 2014 because the bankruptcy court has found that. And that is not the subject of the appeals. The subject of the appeal is whether what was not disclosed under the 2014 statement is disqualifying under 327A and consequently whether the bankruptcy court erred in not sanctioning my firm through a denial of the fees that we earned in the case. What do you say, you talked about healthcare REIT, what do you say about the lyric entities? So the bankruptcy court, the bankruptcy court denied the motion with respect to the lyric entities by saying that there was just, you know, you didn't represent them at all, that there was no relationship. What do you say about that? We didn't represent the lyric entities and we didn't represent HQN. Our firm did represent healthcare REIT and we do continue to represent healthcare REIT. They're a good client of our litigation where the probate estates were involved. The other two entities, lyric and HQN, health quality management, we looked through our conflict system and we don't have any record of ever representing those entities. There is a reflection and Mr. Wilkes raised this to the bankruptcy court, there is a reflection of a payment presumably because lyric was a tenant of healthcare REIT on one of the properties and there were some expenses paid. I don't know represent lyric and I don't represent HQN so I don't know if their asking Medicare or Medicaid for reimbursement was inappropriate. They're not my clients and we found no record of ever representing them such that we would need to disclose that connection. We disclosed all of the connections and so the court is aware in my practice and my practice has evolved quite frankly as a result of this experience. We run a conflicts check when we undertake a representation of a trustee and that conflicts check runs all of the known connections in the case based on the schedules, based on what we learn from the parties. Trustees come into a case after the fact, after the parties have already had relationships and then when we litigate, when we find a target to litigate against, we run subsequent conflicts checks. So it's an evolving conflict system that requires us to go back in and rerun newly identified names. Had healthcare REIT or Lyric or HQN come up as targets, parties against whom we would either need to seek discovery or we would pursue litigation, we would have rerun them. Their names didn't ever come up in the litigation and of note and I know the record is voluminous but Judge Williamson, the bankruptcy court judge in this case, directed the probate estates and the trustee after we conducted a substantial amount of what's called Rule 2004 discovery to by a date certain bring whatever claims we had. We had a deadline to bring whatever claims we brought. Whatever claims we had, the probate estate brought their claims, we eventually put them in one set of litigation. But that was the deadline by which any claims needed to be brought. Healthcare REIT didn't come up, Lyric didn't come up and HQN didn't come up as targets in that process. Nor did they in the months of depositions and document production and trial preparation as targets. And had we known that they were of interest or they were going to be pursued in our normal course of running conflicts checks, we would have run them and made disclosures with respect. Can I ask you another question about the Lyric entities? I guess I've kind of tipped my hand. I kind of, I think what the bankruptcy court did is fairly reasonable in saying that you failed to make disclosures but if there was no actual conflict and you know, it doesn't matter. But with the Lyric entities, I think that's difficult because if you represent the Lyric entities, I think that you know, there probably was a conflict. Best I can tell, the bankruptcy court makes this, you know, you didn't make the, you didn't represent the Lyric entities finding based solely on your supplemental disclosure that there is no sort of anything else in the record that verifies your statements that these payments that were made to your law firm were through, you know, through some kind of lease or something. What do you say about that as a problem in that fact finding? I think you're correct. I think that's how the bankruptcy court came to its conclusion with respect to that fact. We undertook a substantial exercise to review our conflict system and to see if Lyric ever came up as a hit in the system and it didn't. And that's what was reflected. I think the bankruptcy court chose not to allow or engage in discovery on this litigation, on this contested matter, the motion to disqualify myself and my firm because it was familiar with the facts. It was extraordinarily familiar and that's what the district court found on appeal from the bankruptcy court is that the bankruptcy court really had its arms around the issue. It didn't come up in the litigation as a target or as some connection. The bankruptcy court did not feel, I believe, that it needed additional discovery on that issue. There was no indication other than representation from the probate estates that Lyric's name came up or that I mean, we took that information, we ran it through our conflict system, we worked with the United States trustee's office who was satisfied that we didn't have any connection or prior representation and that's a second set of eyes on our work, their department of justice organization and it's their job to look at things like this as well. I don't think that's an error of the bankruptcy court because the bankruptcy court's in the best position to determine if they need discovery or they need evidence on a particular issue. I don't know if the court has any other questions. I'm happy to try to answer them. The construct, I think, with the statutory provisions and particularly 328C makes it clear that once the bankruptcy court determines that there is a rule 2014 non-disclosure, it's up to the bankruptcy court to fashion a relief and the idea that this court should remove the bankruptcy court's discretion in exercising its authority under 328C would render 328C meaningless. The bankruptcy court has to have discretion under these circumstances. Congress gave them the discretion to manage situations like this where there is a connection. Otherwise, it would just be a penalty. Otherwise, it would be a penalty to That's how I read his argument. It's basically a penalty. A gotcha penalty if there was a non-disclosure of an unknown connection to a case. In this case, it was not known to me. It was not known to anyone on my litigation team, but it was a connection that we should have disclosed. It would be a gotcha penalty for failing to disclose an unknown connection that has no material impact on the case. And the penalty that they want is a discouragement, correct? That's correct. Of the fees, we earned over three and a half years of work. I don't know if the court has any other questions. I'm happy to answer them. No. Thank you, Mr. Berman. Thank you, Your Honors. May I please, Court? We have a document, the bankruptcy court had available, it's in the record, that a cost report from Medicaid showed that this firm served as the attorney and received professional fees. It's admitted that that was not disclosed. Lyric, the bankruptcy court found, wasn't any of interest in this case. In May of 2013, Lyric, Lyric 3, TFN Enterprises, which was Timothy F. Nicholson, who owned the Lyric Group, filed and became parties to the bankruptcy. They're actually parties in this bankruptcy. The Andorra Woods facility in Pennsylvania that helped to read on has not yet ever had a disclosure. To this day, at this moment, we've raised it, but it's never been disclosed. The judge would not allow us to present any evidence. We weren't allowed to cross-examine, challenge his affidavit. I'm sick in my stomach. We tried a case together. Let me ask you this. I'll just tell you, the Lyric thing is what kind of bothers me about this. It's just that you have evidence of payments. The law firm doesn't really know where those payments came from. It seems like the case that, if I were the judge, I would want to know, get to the bottom of it. What kind of discovery would you want to try to figure out why these the Lyric entities? We think on the 2012 payments, in December 2012, December 28th, six months after the Shoemaker firm came in, they closed the transaction where the Lyric facilities that were owned by an affiliate named Monarch bought back from HCN those homes. They got rid of the homes right during the bankruptcy. Then the licensing work was handled to relicense these facilities. It's his firm that was paid to do that. He's doing it for the new Lyric. I've seen the closing documents. The judge says they weren't relevant because it's already been determined that HCN owned Lyric. Now, he's saying it's a scrivener's error, but the Slater case, their judiciary stops us saying that. They can't come here now, and they've never raised it, and the brief come to appellate court and say that the 11th Circuit has to accept what they say is a scrivener's error, but they didn't make that argument or challenge it when the finding was blowed. It clearly says Shoemaker, Luke McKendrick believes that the closing statement on the transfers post-petition of these entities, clearly they wanted to get rid of them. I mean, a verdict came in at $200 million post-bankruptcy, at $900 million post-bankruptcy, and one being $150 million post-bankruptcy. Now, these verdicts were all, one of them was reversed, the other two were settled with the bankruptcy trustee. But I'd love to see the discovery because I know what HCN is. They're the mezzanine lender. They put the down payment to buy them, and they took over the home. I know what happened. What kind of discovery would you want, I guess is my, what kind of discovery do you want? I mean, transactions between Capital Funding Group, the transactions between Alan J. Zakari, the transactions between Jack Dwyer, Brian Reynolds, they were the principals that bought the homes. Aaron Fox was retained as the deal counsel so that Shoemaker wouldn't show up, but on the closing documents, Shoemaker was on them, and they were the ones, they describe it in their brief and try to explain away the finding by Judge Covington that there was no need for us to prove this, that the parties already agreed that HCN owned the land and they owned the operator Lyric. To say, though, I want to make a point here. This was the landlord of four subtenants out of six creditors in the bankruptcy. It's inconceivable to me to say that's not an interest. I mean, right now, the entire United States is screaming over transparency and health care licensing. One of the base requirements is you've got to know who owns the land, the building. This judge has found that this is not relevant, that no liability can ever be, he found no liability can ever exist. That's just wrong. He's wrong. He made a mistake. And that's an excuse. I make a living doing this. I know what liability comes to landlords. I know what's happening to the country right now. I don't like doing this. I've never had to do something like this before. But we got nothing, no discovery. I think I know what happened. I think it's sickening. But they went to the U.S. trustee to point out when they had a problem. They didn't go to the court. You're supposed to go to the court and tell them. They didn't tell me. I spent from October 2017 until he filed his affidavit in May of 2018, sending hundreds and thousands of documents over to the trustee and her general counsel. And their general counsel says they did work for these people. It's in the briefs. This case is so, it's so upside down. They talk about our fees. I got $3 million in this case. They got $7 million. Would you like to wrap up? You've gone over your time. Okay. Thank you, ma'am. Thank you. The next case on the calendar.